## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMY D. TATE, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | :  C.A. No. 15-604-LPS |
| NANCY A. BERRYHILL, Acting | : |
| Commissioner of Social Security, | : |
| | : |
| Defendant.[1] | : |

Vanessa L. Kassab, DOROSHOW, PASQUALE, KRAWITZ & BHAYA, Wilmington, DE.

    Attorney for Plaintiff.


David C. Weiss, Acting United States Attorney, United State's Attorney's Office, Wilmington, Delaware.
Heather Benderson, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, Philadelphia, PA.

    Attorneys for Defendant.


### MEMORANDUM OPINION


March 28, 2017
Wilmington, Delaware

---

    [1]Nancy A. Berryhill is now the Acting Commissioner of Social Security.  Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for former Commissioner Carolyn W. Colvin.

**STARK, U.S. District Judge**

## I.   INTRODUCTION

Plaintiff Amy D. Tate appeals from the decision of Nancy A. Berryhill, the Acting

Commissioner of the Social Security Administration ("the Commissioner" or "Defendant"),

denying her claims for disability insurance benefits and supplemental security income under Title

II, 42 U.S.C. §§ 401-434 ("Title II") and Title XVI, 42 U.S.C. §§ 1381-1383 ("Title XVI") of the

Social Security Act.  The Court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3).

Before the Court are cross-motions for summary judgment filed by Plaintiff and the

Commissioner.  (D.I. 14, 17)  Plaintiff asks that the Court reverse the Commissioner's decision

and remand with instructions to award benefits or, in the alternative, remand for further

proceedings before the Commissioner.  (D.I. 15 at 4)  The Commissioner requests that the Court

affirm the decisions denying Plaintiff's application for benefits.  (D.I. 18 at 2)  For the reasons set

forth below, the Court will deny Plaintiff's motion for summary judgment and grant Defendant's

motion for summary judgment.

## II.   BACKGROUND

### A.   Procedural History

On November 22, 2010, Plaintiff filed an application for disability insurance benefits and

supplemental security income.  (D.I. 7 ("Tr.") at 176, 183)  Plaintiff's applications were denied at

the initial level of administrative review on April 29, 2011 (*id.* at 122), and they were denied on

reconsideration on June 22, 2012, after additional consultative examinations (*id.* at 129).  After a

hearing before an Administrative Law Judge ("ALJ") on January 17, 2014, the ALJ issued a

decision on March 19, 2014, finding that Plaintiff did not have a disability within the meaning of

the Social Security Act. (*Id.* at 17-28)  Plaintiff filed a request for review of the ALJ's decision,

which was denied on May 13, 2015, resulting in a final decision of the Commissioner of Social

Security. (*Id.* at 1)

On July 16, 2015, Plaintiff filed suit in the District of Delaware, seeking judicial review

of the Commissioner's denial of benefits. (D.I. 2)  The parties completed briefing on their cross-

motions for summary judgment on September 7, 2016. (*See* D.I. 15, 18, 20)

**B.     Factual History**

Plaintiff was 37 years old at the onset of her alleged disability. (Tr. at 26)  She has a high

school education and has previously worked as a customer service representative and loan

processor. (*Id.* at 27, 41)  Plaintiff contends that she cannot work due to back, leg, and neck

problems, as well as depression. (*Id.* at 220)

**1.     Plaintiff's Testimony**

On January 17, 2014, Plaintiff testified before the ALJ in support of her petition for

benefits. (*Id.* at 35-71)  She testified that her back and hip pain started in 2007 after she was in a

car accident. (*Id.* at 58)  She said that she left her job in 2010 after receiving an injection for

migraines that left her with brain swelling and blurry vision. (*Id.* at 44)  Plaintiff testified that

she experiences blurred vision, and has a prescription for Topamax to treat migraines. (*Id.* at 45)

She testified that she has back pain and cannot walk or sit for long periods. (*Id.* at 46-47)  She

also testified that she has difficulty remembering things. (*Id.* at 47)  Plaintiff stated that she stays

in the house most of the time, has difficulty going up and down stairs, and spends six non-

sleeping hours a day laying on her left side. (*Id.* at 51-52, 61)

### 2.  Dr. Xing's Opinion

Plaintiff began seeing Dr. Xing, a pain management specialist, in early 2011.  (*See* Tr. at 346-51)  Dr. Xing provided epidural and other injections, as well as pain medications.  (*See, e.g. id.* at 394, 437, 524, 537)  Dr. Xing's notes indicate that Plaintiff's pain responded well to treatment, with 50% pain relief (using medications) by July 2011.  (*Id.* at 404)  By 2013, Dr. Xing's records consistently show that Plaintiff showed at least 70% improvement with medication (*see, e.g., id.* at 541, 543, 551, 553), and that Plaintiff told Dr. Xing her medications were "working well" (*id.* at 525, 529).  During this same period, Dr. Xing's notes also show that Plaintiff experienced increased function and mobility as a result of her treatments.  (*See, e.g., id.* at 523, 525, 527, 529)  Further, Dr. Xing noted that Plaintiff was working as a waitress during late 2012 and early 2013.  (*Id.* at 547, 549, 551)

In a patient questionnaire completed on January 14, 2014, in support of Plaintiff's benefits application, Dr. Xing opined that Plaintiff could sit for about four hours and stand or walk for less than two hours during an eight-hour workday, occasionally lift and carry less than ten pounds, and reach overhead for 5% of an 8-hour workday.  (*Id.* at 520-21)  She also stated that Plaintiff would require hourly 15-minute unscheduled breaks during the workday, could sit for 30 minutes at a time, stand only 15 minutes at a time, and was likely to miss more than fours days of work per month.  (*Id.* at 520-22)  Dr. Xing also indicated that Plaintiff could tolerate moderate levels of stress.  (*Id.* at 522)

### C.  The ALJ's Findings

Plaintiff appeals the ALJ's March 19, 2014 decision, which made the following findings:

1.     The claimant meets the insured status requirements of the Social Security

3

Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since October 1, 2010, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 20 CFR 416.971 *et seq.*).

3. The claimant has the following severe impairments: Degenerative Disc Disease of the Lumbar and Cervical Spine, Migraines, and Depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, [the ALJ] finds the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the ability to lift and carry as much as twenty pounds occasionally and ten pounds frequently; can stand and/or walk three or more hours in a given workday but less than six; can sit up to six hours in a workday, but needs a sit/stand option. She can only occasionally, stoop, crouch, crawl, kneel, balance, or climb stairs; should not have to work around ladders, dangerous heights, or dangerous machinery. The claimant can engage in no more than occasional overhead reaching with the right, dominant upper extremity; should not have to work in concentrated exposure to heat, cold, dust, fumes, gases, or vibrations. She retains the capacity to understand, remember, and carry out simple instructions: simple work; can concentrate and pay attention at that level of complexity. She can perform within a work schedule, be on time, produce an adequate amount of work, and limit break times to permitted times. In both instances, it takes extra effort on her part, but she retains the capacity to concentrate and perform within a work schedule, albeit limited to simple, entry-level, unskilled, low stress work. She is further limited to occasional interaction with the general public to reduce stress from the social aspects of work; and . . . with the ability to read, write, and use numbers within the context of simple, unskilled work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 11, 1973 and was 37 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in
English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability
because using the Medical-Vocational Rules as a framework supports a finding
that the claimant is "not disabled," whether or not the claimant has transferable
job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual
functional capacity, there are jobs that exist in significant numbers in the national
economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969,
and 416.969(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act,
from October 1, 2010, through the date of this decision (20 CFR 404.1520(g) and
416.920(g)).

(*Id.* at 17-28)

In making these findings, the ALJ afforded Dr. Xing's opinion "only some weight." (*Id.*

at 25) The ALJ noted that "Dr. Xing's opinion is not fully consistent with her own medical

records that demonstrate good response to treatment and a full range of motion throughout the

musculoskeletal system." (*Id.*) The ALJ also stated that "the claimant has demonstrated the

ability to perform tasks in excess of the functional capacity suggested by Dr. Xing." (*Id.*)

## III.    LEGAL STANDARDS

### A.    Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine

issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 574, 586

n.10 (1986). A party asserting that a fact cannot be – or, alternatively, is – genuinely disputed

5

must support its assertion either by citing to "particular parts of materials in the record, including

depositions, documents, electronically stored information, affidavits or declarations, stipulations

(including those made for the purposes of the motions only), admissions, interrogatory answers,

or other materials," or by "showing that the materials cited do not establish the absence or

presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden,

the nonmovant must then "come forward with specific facts showing that there is a genuine issue

for trial." *Matsushita,* 415 U.S. at 587 (internal quotation marks omitted). The Court will "draw

all reasonable inferences in favor of the nonmoving party, and it may not make credibility

determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

133, 150 (2000).

     To defeat a motion for summary judgment, the non-moving party must "do more than

simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475

U.S. at 586–87; *see also Podohnik v. U.S. Postal Service,* 409 F.3d 584, 594 (3d Cir. 2005)

(stating that party opposing summary judgment "must present more than just bare assertions,

conclusory allegations or suspicions to show the existence of a genuine issue") (internal

quotation marks omitted). However, the "mere existence of some alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary

judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 411 U.S. 242,

247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted." *Id.* at 249–50 (internal citations omitted); *see also Celotex Corp. v.*

6

*Catrett,* 411 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

## B.    Review of the ALJ's Findings

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Monsour Med. Ctr. v. Heckler,* 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart,* 399 F.3d 546, 552 (3d Cir. 2005). Substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour,* 806 F.2d at 1190-91. The Court's review is limited to the evidence that was actually presented to the ALJ. *See Matthews v. Apfel,* 239 F.3d 589, 593-95 (3d Cir. 2001). However, evidence that was not submitted to the ALJ can be considered by the Appeals Council or the District Court as a basis for remanding the matter to the Commissioner for further proceedings, pursuant to the sixth sentence of 42 U.S.C. § 405(g). *See Matthews,* 239 F.3d at 592. "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Gonzalez v. Astrue,* 537 F. Supp. 2d 644, 657 (D. Del. 2008) (internal quotation marks omitted).

The Third Circuit has explained that a "single piece of evidence will not satisfy the

7

substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by

countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence,

particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really

constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.

1983).  Thus, the inquiry is not whether the Court would have made the same determination but,

rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d

1211, 1213 (3d Cir. 1983).  Even if the reviewing Court would have decided the case differently,

it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by

substantial evidence. *See Monsour*, 806 F.2d at 1190-91.

## IV.    DISCUSSION

Plaintiff contends that the ALJ: (1) failed to give adequate weight to the opinion of Dr.

Xing; (2) erred as a matter of law in finding that she could perform sustained work by using

"extra effort;" and (3) failed to hold the government to its burden of establishing that she could

perform other work in the national economy.  (D.I. 15 at 3)  The Commissioner argues that the

ALJ's determinations were supported by substantial evidence, and the decision should be

affirmed.  (*See* D.I. 18 at 17)

### A.    Disability Determination Process

Title II of the Social Security Act, 42 U.S.C. § 423(a)(1)(D), "provides for the payment of

insurance benefits to persons who have contributed to the program and who suffer from a

physical or mental disability." *Bowen v. Yuckert,* 482 U.S. 137, 140 (1987).  Title XVI of the

Social Security Act provides for the payment of disability benefits to indigent persons under the

SSI program. *See* 42 U.S.C. § 1382(a).  A "disability" is defined for purposes of SSI and DIB as

8

the inability "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 1382c(a)(3). A claimant is disabled "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(l)(B); *see also*

*Barnhart v. Thomas*, 540 U.S. 20, 21-23 (2003).

In determining whether a person is disabled, the Commissioner is required to perform a

five-step sequential analysis. *See* 20 CFR § 416.920; *see also Russo v. Astrue*, 421 F. App'x

184, 188 (3d Cir. Mar. 21, 2011). If a finding of disability or non-disability can be made at any

point in the sequential process, the Commissioner will not review the claim further. *See* 20

C.F.R. § 416.920(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any

substantial gainful activity. *See* 20 C.F.R. § 416.920(a)(4)(i) (mandating finding of

non-disability when claimant is engaged in substantial gainful activity). If the claimant is not

engaged in substantial gainful activity, step two requires the Commissioner to determine whether

the claimant is suffering from a severe impairment or a combination of impairments that is

severe. *See* 20 CFR § 416.920(a)(4)(ii) (mandating finding of non-disability when claimant's

impairments are not severe). If the claimant's impairments are severe, the Commissioner, at step

three, compares the claimant's impairments to a list of impairments that are presumed severe

enough to preclude any gainful work. *See* 20 C.F.R. § 416.920(a)(4)(iii). When a claimant's

9

impairment or its equivalent matches an impairment in the listing, the claimant is presumed

disabled. *See id.* If a claimant's impairment, either singly or in combination, fails to meet or

medically equal any listing, the analysis continues to steps four and five. *See* 20 C.F.R.

§ 416.920(e).

At step four, the Commissioner determines whether the claimant retains the residual

functional capacity to perform her past relevant work. *See* 20 C.F.R. § 416.920(a)(4)(iv) (stating

claimant is not disabled if able to return to past relevant work). A claimant's residual functional

capacity is "that which an individual is still able to do despite the limitations caused by his or her

impairment(s)." *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001). "The claimant bears the

burden of demonstrating an inability to return to her past relevant work." *Plummer v. Apfel*, 186

F.3d 422, 428 (3d Cir. 1999) (internal citation omitted).

If the claimant is unable to return to her past relevant work, step five requires the

Commissioner to determine whether the claimant's impairments preclude her from adjusting to

any other available work. *See* 20 C.F.R. § 416.920(a)(4)(v) (mandating finding of non-disability

when claimant can adjust to other work); *see also Plummer*, 186 F.3d at 428. At this last step,

the burden is on the Commissioner to show that the claimant is capable of performing other

available work before denying disability benefits. *See id.* In other words, the Commissioner

must prove that "there are other jobs existing in significant numbers in the national economy

which the claimant can perform, consistent with [her] medical impairments, age, education, past

work experience, and residual functional capacity." *Id.* In making this determination, the ALJ

must analyze the cumulative effect of all of the claimant's impairments. *See id.* At this step, the

ALJ often seeks the assistance of a vocational expert. *See id.*

10

## B.     ALJ's Consideration of Dr. Xing's Opinion

Plaintiff argues that the ALJ improperly failed to give controlling weight to the opinion of her treating physician, Dr. Xing. (D.I. 15 at 12-15)  Defendant responds that the ALJ reasonably assigned little weight to Dr. Xing's opinion because her opinion was inconsistent with substantial evidence in the record.  (D.I. 18 at 9-15)

Treating physician opinions are assessed according to 20 C.F.R. §§ 404.1527, 416.927. Controlling weight is afforded to a treating physician opinion when it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c); *see also Fargnoli*, 247 F.3d at 43.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Adorno v. Shalala*, 40 F.3d 43, 46 (3d. Cir. 1994) (internal quotation marks omitted).

If a treating physician's opinion is not entitled to controlling weight, that determination "must not automatically become a decision to give a treating physician's opinion no weight whatsoever." *Gonzalez*, 537 F. Supp.2d at 660.  Instead, an ALJ should consider numerous factors in determining the weight to give it, including: the length of treatment relationship, frequency of examination, nature and extent of the treatment relationship, supportability of the opinion afforded by relevant medical evidence, consistency of the opinion with the record as a whole, and specialization of the treating physician. *See* 20 CFR § 416.1527(c).  In general, physicians' reports deserve "great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer*, 186 F.3d at 429 (internal citation omitted).  Thus, "in many cases, a treating source's

11

medical opinion will be entitled to the greatest weight and should be adopted even if it does not meet the test for controlling weight." Social Security Rule 96-2P.

An ALJ may reject a treating physician's opinion "only on the basis of contradictory medical evidence." *Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir. 2000) (internal quotation marks omitted). It follows that an ALJ cannot reject a treating physician's opinion "for no reason or for the wrong reason." *Id.* at 317 (internal quotation marks omitted). More specifically, an ALJ "cannot disregard the opinion of a treating physician without referencing objective medical evidence conflicting with the treating physician's opinion and explain[ing] the reasoning for rejecting the opinions of the treating physician." *Dass v. Barnhart,* 386 F. Supp. 2d 568, 576 (D. Del. 2005). When an ALJ's decision is to deny benefits, the notice of the determination generally must contain specific reasons for the weight given to the treating source's medical opinion, along with support from substantial evidence in the case record. *See* Social Security Rule 96-2P. The determination should make clear to any subsequent reviewers the weight the adjudicator gave the treating source's medical opinion and the reasons for that weight. *See id.* In reviewing an ALJ's determination, it is not for the Court to re-weigh the medical opinions in the record but, rather, to determine if there is substantial evidence to support the ALJ's weighing of those opinions. *See Monsour*, 806 F.2d at 1190-91.

Here, the ALJ declined to give controlling weight to the opinion of Plaintiff's treating physician, Dr. Xing. (Tr. at 25) The ALJ cited two reasons for this conclusion: (1) "Dr. Xing's opinion is not fully consistent with her own medical records that demonstrate good response to treatment and a full range of motion throughout the musculoskeletal system," and (2) Plaintiff "has demonstrated the ability to perform tasks in excess of the functional capacity suggested by

12

Dr. Xing." (*Id.*) The ALJ, therefore, gave Dr. Xing's opinion only some weight. (*Id.*)

As the ALJ recognized, Dr. Xing's notes show that although Plaintiff suffers from chronic low back and right hip pain, Plaintiff's pain improved with medication and physical therapy. (*See id.* at 23) (citing *id.* at 441) Further, the ALJ identified Dr. Xing's records as revealing that Plaintiff worked as a waitress at least in late 2012 and early 2013. (*See id.* at 25) (citing *id.* at 547) Additionally, the ALJ cited a number of objective medical records showing that Plaintiff exhibited a normal range of motion. (*See, e.g.*, *id.* at 23) Substantial evidence supports the ALJ's determination that Dr. Xing's own records, as well as other objective medical records, are inconsistent with her opinion. *See Hock v. Comm'r Soc. Sec.*, 646 F. App'x 171, 174 (3d Cir. 2016). Accordingly, the ALJ was entitled to decline to give Dr. Xing's opinion controlling weight, and the ALJ sufficiently described her reasons for doing so. (*See* Tr. at 25)

Plaintiff further argues that the ALJ failed to adequately explain what weight was assigned to Dr. Xing's opinion. Defendant asserts it is clear that the ALJ accepted that Plaintiff is limited in many of the ways Dr. Xing suggested, but not to the same degree. In declining to give controlling weight to a treating source's medical opinion, the ALJ "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion." *See* Social Security Rule 96-2P. Here, the ALJ provided sufficient explanation to enable judicial review. In particular, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. at 23) The ALJ then provided a detailed explanation of Plaintiff's limitations, citing to objective

13

medical evidence of record. (*Id.* at 23-25)  The ALJ accepted the types of limitations proposed by Dr. Xing but found that "the objective medical evidence of record does not support the ***degree*** of limitation alleged by the claimant." (*Id.* at 24) (emphasis added)  Accordingly, the Court determines that the ALJ fulfilled her obligation to explain why she did not give controlling weight to the Dr. Xing's opinion, in light of substantial evidence in the record. *See Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981).

### C.    ALJ's "Extra Effort" Determination

Plaintiff argues that the ALJ erred as a matter of law in finding that she could perform sustained work by using "extra effort." (D.I. 15 at 15)  In describing Plaintiff's residual functional capacity, the ALJ stated: "She retains the capacity to understand, remember, and carry out simple instructions: simple work; can concentrate and pay attention at that level of complexity.  She can perform within a work schedule, be on time, produce an adequate amount of work, and limit break times to permitted times.  In both instances, it takes extra effort on her part, but she retains the capacity to concentrate and perform within a work schedule, albeit limited to simple, entry level, unskilled, low stress work." (Tr. at 22)  Plaintiff contends that the ALJ applied a vague standard of "extra effort," and argues that the ALJ failed "to find that either Ms. Tate retains the residual functional capacity to perform sustained work activities, or she does not." (D.I. 15 at 15)

It is clear that the ALJ made a finding that Plaintiff does retain the residual function capacity to perform sustained work activities.  The ALJ explicitly stated that "she retains the capacity to concentrate and perform within a work schedule," subject to some limitations. (Tr. at 22)  Later, the ALJ reiterates the finding: "Based upon the claimant's actual activities and

14

hearing testimony, the undersigned finds her mental impairment limits her to the performance of SVP 1 and SVP 2 work involving only simple, instructions and one- or two-step entry level instructions." (Tr. at 25)  Further, contrary to Plaintiff's argument, there is no indication that the vocational expert was confused by the ALJ's description of a hypothetical individual.  (Tr. at 63-66)  Accordingly, the Court finds no reversible error.

### D.    ALJ's Finding that Plaintiff Can Perform Work in the National Economy

Because the ALJ found that Plaintiff is unable to perform any past relevant work (Tr. at 26), the burden shifted to the Commissioner to "demonstrate the claimant is capable of performing other available work." *Plummer*, 186 F.3d at 428.  "The ALJ will often seek the assistance of a vocational expert at this . . . step," *id.*, asking the vocational expert hypothetical questions regarding "whether, given certain assumptions about the claimant's physical capability, the claimant can perform certain types of jobs, and the extent to which such jobs exist in the national economy," *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984).  "A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

Plaintiff contends that, in assessing whether there is available work, the ALJ relied on a hypothetical question that "was deficient as a matter of law, as it did not comprehensively describe all of [Plaintiff]'s impairments."  (D.I. 15 at 16)  Plaintiff identifies two alleged deficiencies: (1) "the ALJ should have afforded controlling weight to the opinions of Dr. Xing" or "explain[ed] what weight she was giving" to the opinion (*id.*), and (2) given the vague "extra effort" standard used by the ALJ, "the vocational expert could not testify to whether that standard

15

of 'extra effort' was compatible with sustained, competitive work activities" (*id.* at 17). Having concluded that the ALJ did not err in her consideration of Dr. Xing's opinion or use of the "extra effort" language, the Court also concludes that the hypothetical question posed to the vocational expert was not deficient on those bases. Accordingly, the Court determines that substantial evidence supports the Commissioner's finding that there is work in the national economy that Plaintiff can perform.

## V.    CONCLUSION

Given the substantial evidence supporting the ALJ's findings, the Court concludes that neither an award of benefits nor a remand is warranted. Accordingly, the Court will grant Defendant's motion for summary judgment and deny Plaintiff's motion for summary judgment. An appropriate Order follows.